Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50046 | **DATE** | 11/1/2011 |
| **CASE TITLE** | Castronovo v. County of Winnebago, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion to dismiss [15] is granted. Counts I and III are dismissed with prejudice as to all defendants, and official capacity claims against the individual defendants are dismissed from Count II.

■ [ For further details see text below.]

Docketing to mail notices.

## STATEMENT

On April 8, 2011, plaintiff, Michael Castronovo, proceeding pro se, filed a three-count amended complaint against defendants, Winnebago County and Winnebago County officials Scott Christiansen, Joseph Vanderwerf, Wayne Vlk, Pearl Hawks, Dave Fiduccia, Frank Gambino, Angie Goral, Kyle Logan, Kay Mullins, Tom Owens, Dianne Parvin, Steve Schultz, and Dave Tassoni, both individually and in their official capacities. In Count I of his complaint, plaintiff alleges that he was denied substantive due process and suffered a taking when the Winnebago County Board denied his request for a cut in the median on Harrison Avenue near his property. In Count II, plaintiff asserts that his First Amendment rights were violated when Scott Christiansen and other defendants denied plaintiff the right to speak or censored his speech at various county board meetings. In Count III, plaintiff generally alleges a procedural due process violation under the Fourteenth Amendment and sections one and two of article I of the Illinois Constitution. Defendants move to dismiss Counts I and III pursuant to Federal Rule of Civil Procedure 12(b)(6) and to dismiss the claims against the county officials in their official capacities as redundant.

### I. BACKGROUND

Prior to 1993, the access rights to 6812 Harrison Avenue were owned by the State of Illinois. In 1993, plaintiff purchased the access rights onto Harrison Avenue for $100 pursuant to County Resolution 288 (CR 288) in order to build a driveway onto Harrison Avenue. From that time, and continuing until construction began on Harrison Avenue in May 2008, there was no left turn access from plaintiff's property east-bound onto Harrison Avenue. During construction on Harrison Avenue, the four-inch median was removed, which allowed plaintiff full ingress from and egress to the east-bound lane of Harrison Avenue. However, in May 2009, and as part of the design specifications for the construction on Harrison Avenue, a median was re-installed, which consequently obstructed plaintiff's east-bound access onto Harrison Avenue.

Beginning in April 2009, plaintiff requested approval from the Winnebago County Board to keep access to and from the east-bound lane of Harrison Avenue open. It is alleged that when plaintiff arrived at a county board meeting, defendant Christiansen shouted "There's the troublemaker." It is further alleged that defendants

| STATEMENT |
|---|

Hawks and/or Vanderwerf distributed a two-page document containing false allegations regarding the effect of leaving open the cut in the median. Among other things, the document stated that the removal of the median was a "safety issue," which would cost between $20,000 and $62,000 and may not be allowed by the Illinois Department of Transportation. It is also alleged that defendants Hawks and Vanderwerf consistently reminded the Board that installation of a median was a "safety issue" during the meeting. Plaintiff was allowed to speak at this meeting.

Gaining no traction on the issue, plaintiff sought to discuss his proposal at the Winnebago County Public Works meetings on May 5 and 14, 2009. The Public Works meeting on May 14 was called for the specific purpose of discussing and voting on County Resolution 09-044 (CR 09-044), which was brought forth by two board members who are not parties to this suit. CR 09-044 sought to recognize the left turn access rights asked for by plaintiff. At both meetings, defendants Vanderwerf and Vlk allegedly gave false information to board members and failed to adequately answer inquiries regarding the figures used in determining the costs of eliminating the median. Defendant Vanderwerf did not let plaintiff speak during either of the meetings. Plaintiff further alleges that the meeting on May 14 only had four members present during discussion of the resolution, but late-arriving board members still voted on the resolution without hearing the merits of the proposed resolution. Further, not a single member of the board requested a postponement to correct misinformation. The resolution was denied by the board.

Though plaintiff believes the resolution was unnecessary because he owns the access rights to Harrison Avenue, he sought reconsideration of the denial of CR 09-044 on June 16, 2009 at another Public Works meeting. Before the meeting, plaintiff telephoned defendants Hawks, Fiduccia, Logan, and Tassoni in order to present evidence that the real cost of cutting out the median was $5,000 and that the true figure was known by defendant Vanderwerf the entire time. On that same night, plaintiff attended the meeting only to find that it had been canceled because too many members called in sick. Plaintiff alleges that this meeting was canceled by defendant Vanderwerf because of the materials he would have presented. Plaintiff further asserts that Vanderwerf acted without authority in canceling the Public Works meeting. While exiting the meeting, defendant Vanderwerf stated, "I don't want you to have a cut," and "you shouldn't be allowed to have a business there, you belong in the business district."

## II. DISCUSSION

Defendants' motion for dismissal of Counts I and III is premised on plaintiff's failure to state claims upon which relief can be granted, and to dismiss all official capacity claims against the individual defendants on the ground that these claims are redundant of the claims against the County of Winnebago. Because plaintiff is proceeding pro se, his pleading is given "fair and meaningful consideration." Ricketts v. Midwest Nat. Bank, 874 F.2d 1177, 1183 (7th Cir. 1989) (quotation marks omitted).

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) may be brought on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2) or; (2) a challenge to the legal cognizability of the claim. Fed. R. Civ. P. 8(a)(2). When construing the merits of a motion to dismiss under Rule Rule 12(b)(6), all well-pleaded factual allegations will be drawn in the non-moving party's favor. Christensen v. Cnty. of Boone, 483 F.3d 454, 457 (7th Cir. 2007). Courts may look only to the pleadings in determining whether a plaintiff has adequately stated a claim; consideration of information outside the pleadings converts the motion to one for summary judgment. Fed. R. Civ. P. 12(d). For a claim to survive a 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "plausible on its face." Id. at 555, 570. A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." Id. at 556.

| **STATEMENT** |
|---|

### A. Official Capacity Claims

It is unclear whether plaintiff is attempting to plead several official capacity claims by designating each defendant on his complaint as "individually, and as officer or official employed by Winnebago County." However, presuming that plaintiff does allege an official capacity claim against each individual defendant, in addition to his claim against the County of Winnebago, defendants argue that naming the individual defendants in their official capacities is redundant and should be dismissed. Plaintiff argues that the individual defendants are properly named because there are allegations of personal involvement on the part of those officials.

When attempting to hold defendants liable in their individual capacities under § 1983, plaintiff must allege that each individual was personally involved in the alleged constitutional violation. Palmer v. Marion Cnty., 327 F.3d 588, 594 (7th Cir. 2003). On the other hand, to maintain an official capacity claim under § 1983, plaintiff must allege that his constitutional injury was caused by (1) an express policy of the governmental entity; (2) a widespread practice, which is not pursuant to law, but "is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority." Wragg v. Vill. of Thornton, 604 F.3d 464, 467 (7th Cir. 2010) (quotation marks omitted); see Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). An action against a employee of the county in his official capacity is equivalent to a suit against the entity he represents; in this case, each individual defendant represents the County of Winnebago. Jungels v. Pierce, 825 F.2d 1127, 1129 (7th Cir. 1987). It "makes no practical difference [that the individual defendants are sued in their official capacities]; the city is liable for the official actions of its senior policy-making official[s]." Id. As "misbehaving employees are responsible for their own conduct," it is redundant to sue both the county and individual county board members acting in their official capacity. Lewis v. City of Chi., 496 F.3d 645, 656 (7th Cir. 2007). Accordingly, the defendants in their official capacities, other than the County of Winnebago, are dismissed from this case.

### B. Count I - Taking and Substantive Due Process

Plaintiff contends that CR 288 was a legally binding purchase between the County of Winnebago and himself, with the knowledge and consent of the State of Illinois. Thus, when the County of Winnebago and State of Illinois decided to perform construction on Harrison Avenue, the re-building of a median – which previously existed but was removed during the construction in 2008 – was a taking of property without just compensation. He further alleges that the decision of the Winnebago County Board deprived him of this property right without due process when the Board denied his request for east-bound access onto Harrison Avenue. Defendants maintain that a property owner does not own a property interest in the flow of traffic past his property and that the action taken by Winnebago County was a lawful exercise of their police power. Plaintiff counters, arguing that his situation is distinct because he purportedly owns the access rights to Harrison Avenue and it entitles him to "full" access.

The takings clause of the United States Constitution reads: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Similarly, the Illinois Constitution provides: "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law." Ill. Const. Art. 1, § 15. "The first step in both due process and taking analyses is to determine whether there is a property right that is protected by the Constitution." Peterson v. United States Dept. of the Interior, 899 F.2d 799, 807 (9th Cir. 1990); see also Napleton v. Vill. of Hinsdale, 229 Ill. 2d 296, 307 (2008) ("[A] court must first determine the nature of the right alleged to be infringed by the government's action.").

The Illinois code provides that an individual has the right to a "reasonable means of ingress from and egress to the State highway consistent with the use being made of such property and not inconsistent with public safety or with the proper construction and maintenance of the State highway for purposes of travel, drainage and other appropriate public use." 605 ILCS 5/4-210. Thus, before recognizing whether there is an actual violation, the central inquiry is whether plaintiff's "reasonable means of ingress from and egress to" Harrison Avenue was

lost when the County of Winnebago re-built the median. Id. Plaintiff points to CR 288, which states that the State of Illinois agreed to sell back the access rights to plaintiff on Harrison Avenue, which were previously purchased by the State of Illinois in connection with the improvement of Harrison Avenue.[1] It also states that the intended purpose of selling back the access rights was for plaintiff to construct a driveway from Harrison Avenue to his property.

It is well-settled that access rights to property cannot be taken away or diminished without just compensation, but there is no such taking or impairment "where the property owner's free and direct access to the lane of traffic abutting on his property has not been taken or impaired." Dep't of Pub. Works & Bldgs. v. Mabee, 22 Ill. 2d 202, 205 (1961); Winnebago Cnty. v. Rico Corp., 11 Ill. App. 3d 882, 885 (1973). Plaintiff does not allege that his access rights to the abutting west-bound lane have been taken and he points to no law or decision, other than CR 288, which provides support for finding that he had a vested property right in full ingress from and egress to the east-bound lane of Harrison Avenue.

Although nothing in CR 288 states that plaintiff has "full access" rights, he argues that Rico Corp. is distinguishable because the court did not mention that the property owner in Rico owned full access rights. See id. However, plaintiff misinterprets the access rights sold to him by the State of Illinois. When a landowner sells the access rights to his property, normally in connection with construction on an existing or new road, he allows the state to block access to or from his driveway, and is compensated for it. Dep't of Pub. Works & Bldgs. v. Wilson & Co., Inc., 62 Ill. 2d 131, 139 (1975) ("It is clear from the foregoing cases and others that a property owner suffers compensable damages if his access to an abutting street is completely eliminated."). When buying back that access right, he is not entitled to full access; rather, he is only granted a reasonable means of ingress and egress. 605 ILCS 5/4-210. Illinois courts have determined that one-way access is sufficient to satisfy a "reasonable means of ingress to and egress from" an abutting street. Wilson, 62 Ill. 2d at 142 (observing that "the rule that the right of access to an existing public street or highway is a valuable property right which cannot be taken away or materially impaired without just compensation cannot be applied, however, where the property owner's free and direct access to the lane of traffic abutting on his property has not been taken or impaired" (quotation marks omitted)); see also 605 ILCS 5/4-210. Thus, when plaintiff bought his access rights, he purchased the same access rights owned by the defendant in Rico Corp., even though that detail was not stated in the opinion. Rico Corp., 11 Ill. App. 3d at 882. Plaintiff would not have been able to build his driveway without first purchasing the access rights back from the State of Illinois because without so doing, he would not have owned a right to access the street. Furthermore, plaintiff bought his access rights with the median already present on Harrison Avenue.[2] Since the defendant has not alleged the denial of a liberty or property interest, defendants' motion to dismiss for failure to state a claim is granted as to Count I.

### C. Count III - Procedural Due Process

Though difficult to discern, presumably plaintiff alleges a violation of his Fourteenth Amendment right to a fair hearing. In Count III, plaintiff alleges that individual members of the County Board deliberately attempted to circumvent or prevent his testimony regarding any information relating to the median on Harrison Avenue. He further alleges that it became custom and practice to allow defendant Vanderwerf more power than granted by his position, which resulted in an abuse of such power in relation to Winnebago County procedures, including the cancellation of a June 16, 2009 Winnebago County Public Works meeting. However, having already determined that plaintiff did not have a valid property right in access to both sides of Harrison Avenue, any deficiency in the procedures that were afforded to him cannot constitute a constitutional violation under the due process clause because no deprivation of a life, liberty, or property interest took place. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972). Accordingly, defendants' motion to dismiss for failure to state a claim is granted as to Count III.

### III. CONCLUSION

| STATEMENT |
|---|
| In light of the foregoing, defendants' motion to dismiss for failure to state a claim regarding Counts I and III is granted. Further, all official capacity claims remaining in Count II against Winnebago County officials Scott Christiansen, Jeseph Vanderwerf, Wayne Vlk, Pearl Hawks, Dave Fiduccia, Frank Gambino, Angie Goral, Kyle Logan, Kay Mullins, Tom Owens, Dianne Parvin, Steve Schultz, and Dave Tassoni are dismissed on the grounds that they are redundant of the claim against the County of Winnebago. |

1. Plaintiff also points to various provisions in the Illinois Access Control Manual. Yet, the access control manual directs the reader to 605 ILCS 5/8-101, which states unambiguously that the county board has the right to "plan, locate, relocate, construct, reconstruct, maintain, alter, improve, vacate and regulate" existing highways. 605 ILCS 5/8-101. It also states that a particular county board has the right to "promote the safety and convenience of highway traffic." Id.

2. It is vexing that plaintiff now seeks unlimited access to Harrison Avenue after fifteen years of limited one-way access. Since compensation for a taking is the difference before and after the taking, in this situation there would be no difference in property value because the east-bound access was only available while the road was under construction and had been blocked for over fifteen years. Dept. of Transp. v. Kelley, 352 Ill. App. 3d 278, 280 (2004). Plaintiff bought the access rights with knowledge that they were for partial access and had no legitimate expectation that east-bound access would remain unblocked.