# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50046 | **DATE** | 11/5/2012 |
| **CASE TITLE** | Castronovo v. The County of Winnebago, Illinois, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion for summary judgment as to Count II [45] is granted in part and denied in part.

■ [ For further details see text below.]  Docketing to mail notices.

    Plaintiff, Michael Castronovo, filed this suit against defendants, Winnebago County and a number of Winnebago County officials (collectively "Winnebago County"), seeking compensatory and punitive damages based on purported violations of his due process rights and freedom of speech. This court has already dismissed the due process allegations contained in Counts I and III based on defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Currently before the court is Winnebago County's motion for summary judgment as to Castronovo's remaining claims based on freedom of speech found in Count II of the amended complaint. For the reasons that follow, Winnebago County's motion is granted in part, and denied in part.

## I. BACKGROUND

    Castronovo runs his business out of the home he owns on Harrison Avenue in Rockford, Illinois. In May 2008, the median on Harrison Avenue was removed during construction, which permitted Castronovo for the first time to access his property from both the east- and west-bound lanes of Harrison Avenue. In May 2009, as part of the design specifications for the construction on Harrison Avenue, a median was reinstalled which once again blocked Castronovo's access to and from the east-bound lane of Harrison Avenue.

    Beginning in April 2009, Castronovo began attending, and speaking at, Winnebago County Board ("the Board") meetings to request that he retain access from the east-bound lane of Harrison Avenue to his property. From that time until Castronovo filed his lawsuit in 2011, he claims that the Board violated his rights to free speech in five different ways:

    First, from April 2009 until December 2009, Castronovo spoke eight times before the Board, with six of those speeches involving the median or lane construction near his property and his objections to both.[1] During that same timeframe, Castronovo was twice denied the right to speak before the Board by its Chairman, defendant Christiansen, on July 9, 2009 and December 10, 2009.

    Second, Castronovo alleges that the rest of the Board violated his free speech rights by failing to vote, on their own initiative, to reverse the Chairman's decision.

    Third, Castronovo states, and Winnebago County denies, that the Chairman informed Castronovo prior to speaking in two speeches, in August 2009 and February 2011, that he could not mention Harrison Avenue or give specific people's names in his speech.

Fourth, in May 2009, Castronovo attended two meetings held by Winnebago County public works, a committee of the Board. At those meetings, where the committee considered and voted on his proposal to leave an opening in the median to permit access to and from his property into the east-bound lane of Harrison Avenue, Castronovo was not permitted to speak. The committee did permit defendant Vanderwerf, the Winnebago County Engineer, to speak, however. Castronovo claims that many of the representations Vanderwerf made to the committee were false and went unrebutted because he was not permitted to speak.

Finally, Castronovo asserts that in October 2009, a Cherry Valley Police Officer threatened Castronovo, allegedly at the behest of defendant Fiduccia who is one of the Board members. According to Castronovo, the officer informed him that if Castronovo continued to "com[e] around" that Fiduccia would insure that "no u-turn" signs would be placed on Harrison Avenue to further limit access to Castronovo's property. Fiduccia denies instructing any police officer to threaten Castronovo.

In its motion for summary judgment on all five allegations, Winnebago County argues that Castronovo's requests for permission to speak at the meetings on July 9, 2009 and December 10, 2009 show that the speeches were going to rehash issues that had already been before the Board and on which Castronovo had lost. Winnebago County also argues that the restrictions the Chairman allegedly placed on Castronovo's August 2009 and February 2011 speeches were designed to avoid repetitive speech on issues the Board had already decided. Accordingly, the Board, through its Chairman, could impose a reasonable "time, place, and manner" restriction on Castronovo to avoid rehashing repetitious issues. Additionally, Winnebago County argues that defendants, other than Chairman Christiansen, should be protected by qualified immunity because there is no case law establishing that the other members of the Board were required to overrule the Chairman on their own initiative to permit Castronovo to speak. Furthermore, Winnebago County argues that the committee meetings were not an open public forum, and therefore Castronovo had no right to speak at those meetings. Finally, Winnebago County argues that Castronovo failed to provide any evidence that Fiduccia instructed any officer to threaten Castronovo in an attempt to stifle his speech. The court will consider each argument in turn.

## II. ANALYSIS

### 1. Standard of Review

A court may only grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 489-90 (7th Cir. 2007). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Hemsworth, 476 F.3d at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. Id. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate by specific factual allegations, that there is a genuine issue of material fact that requires trial." Id. The party need not meet, in the court's eyes, the preponderance of the evidence standard, but must still provide more than a "mere scintilla" of evidence to show that there is a genuine issue of material fact. See Zimmerman v. Chi. Bd. of Trade, 360 F.3d 612, 623 (7th Cir. 2004).

### 2. Reasonable Time, Place, and Manner Restrictions

For the purposes of this motion, Winnebago County has admitted that the public participation segment of the Board meetings comprise designated public forums for First Amendment purposes. "Designated public forums are locations or channels of communication that the government opens up for use by the public for expressive activity." Surita v. Hyde, 665 F.3d 860, 869 (7th Cir. 2011). "A designated public forum is created when the government intentionally makes property or a channel of communication open or available to a class of speakers rather than permitting only selective access to particular speakers who must obtain permission to use it." Id.

Government has only a limited ability to regulate expressive activity in traditional and designated

> public forums. Any content-based exclusion of speech in such forums is subject to strict scrutiny, meaning that the government must show the exclusion is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. Government may enforce reasonable time, place, and manner restrictions provided they are content neutral, they are narrowly tailored to serve a significant government interest, and ample alternative channels of communication exist.

Id. at 870 (citations and quotation marks omitted).

Winnebago County argues that the Chairman's denial of Castronovo's requests on July 9, 2009 and December 10, 2009 were reasonable time, place, and manner restrictions to avoid repetitive content before the Board. This court agrees.

The request to speak form, and a copy of the written speech Castronovo handed out to the Board members on July 9, 2009 despite not being permitted to give the speech verbally, both confirm that the content of the July 9, 2009 speech was going to be the same topic and material as the prior three speeches given to the Board. Likewise, the request form for the December 10, 2009 meeting shows that, once again, Castronovo wanted to discuss the safety issues concerning the median on Harrison Avenue, except that this time he wanted to address the newest accident that happened in the area caused, in his opinion, by the median.

A Board meeting "is still just that, a governmental process with a governmental purpose." White v. City of Norwalk, 900 F.2d 1421, 1425 (9th Cir. 1990).

> In the first place, in dealing with agenda items, the Council does not violate the first amendment when it restricts public speakers to the subject at hand. While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, it certainly may stop him if his speech becomes irrelevant or repetitious.

Id. (citations and footnote omitted). Under Winnebago County Ordinances, the Chairman "shall preserve order and decorum and shall determine all questions of order." Winnebago County, Ill., Code ch. 2, div. 3, § 62. A number of courts have found that the government has a significant interest in the orderly and efficient conduct of its business. See Surita, 665 F.3d at 871; White, 900 F.2d 1425-26; Jones v. Heyman, 888 F.2d 1328, 1332-33 (11th Cir. 1989); I. A. Rana Enters., Inc. v. City of Aurora, 630 F. Supp. 2d 912, 924 (N.D. Ill. 2009); Dayton v. Esrati, 707 N.E.2d 1140, 1146 (Ohio 1997). See generally Zapach v. Dismuke, 134 F. Supp. 2d 682, 692 (E.D. Pa. 2001) (collecting cases). The rule against permitting repetitive speeches is narrowly tailored to meet this interest—it prevents individuals from wasting the Board's time by revisiting issues time and again the Board has already heard and decided. See Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989) ("[T]he requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." (quotation marks omitted)). Finally, there were ample alternative channels of communication left open for Castronovo, many of which he took advantage of. First, according to the discovery materials, Castronovo was permitted to pass out written materials at both meetings he was not allowed to speak at, including a written copy of the full speech he had intended to give at the July 9, 2009 hearing. See I. A. Rana Enters., 630 F. Supp. 2d at 924 (holding that written communication with City Council members in lieu of a speech is an adequate alternative channel of communication). Additionally, the materials attached to the parties' motions allude to a number of letters, telephone calls, and personal conversations between Castronovo and the Board and other county and state officials on the matter. Finally, Castronovo also included in his discovery materials a tape from local televised news, where he was able to once again air his concerns, with some of the news taping done during at least one of the Board meetings.

The same rationale applies to Castronovo's allegations that the Chairman instructed him that he could not mention Harrison Avenue in his August 2009 and February 2011 speeches. By the time both speech requests were offered, Castronovo had already spoken concerning the Harrison Avenue median at least three times. Accordingly, restricting Castronovo's speeches concerning Harrison Avenue was just another reasonable time, place, and manner constraint as set out above. However, the same rationale does not apply to Castronovo's

allegations that Chairman Christiansen told him that he could not name names, including Christiansen's own name, in Castronovo's speeches. According to Castronovo's deposition testimony, Christiansen would have prevented Castronovo from speaking at all unless Castronovo promised not to mention Christiansen's name during the speeches, ostensibly in an effort to shield himself from criticism. Such a restriction was clearly content based and content based restrictions are subject to strict scrutiny. See Surita, 665 F.3d at 870. An official's decision to protect himself, or others, from criticism does not survive strict scrutiny review. See Stilp v. Contino, 629 F. Supp. 2d 449, 461 (E.D. Pa. 2009) ("The First Amendment requires that public officials be prepared to endure a heightened level of criticism—some of which may be entirely baseless—as a necessary consequence of their station in democratic society."). Winnebago County denies that Christiansen made such a comment, but at this stage the court is bound to only determine whether there is a genuine factual issue for the jury to determine and here it is clear there is a genuine issue of material fact as to whether Christiansen actually told Castronovo that he could not mention names in his speeches to shield county officials from public criticism.

Accordingly, because the government has a significant interest in efficient Board meetings and Castronovo's speech was only regulated to the point it was repetitive with several previous speeches while still leaving open adequate alternative means to address the same issue, this court grants Winnebago County's motion for summary judgment as it relates to the Chairman's decision not to permit Castronovo to speak on July 9, 2009 and December 10, 2009. Because this court has determined that Castronovo's First Amendment rights were not violated at the July 9, 2009 and December 10, 2009 meetings, there is no need to consider whether the other Board member defendants, other than Chairman Christiansen, would be covered by qualified immunity as argued by the defendants. See Pearson v. Callahan, 555 U.S. 223, 816-18 (2009) (holding that to find qualified immunity, the court asks whether the plaintiff has set out a constitutional violation, and second, the court must determine if the violated constitutional right was clearly established at the time of the violation). Likewise, this court grants Winnebago County's motion for summary judgment as it relates to Christiansen's restriction concerning Harrison Avenue of Castronovo's August 2009 and February 2011 speeches. However, the court denies Winnebago County's motion as it relates to Christiansen's restrictions concerning Castronovo's use of particular names in those same speeches.

### 3. The Public Works Committee Meetings

Winnebago County next argues that this court should grant summary judgment concerning Castronovo's allegations that he was not permitted to speak during two public works committee meetings when the committee was voting on his resolution. Specifically, Winnebago County argues that the committee meetings are not designated public forums, as the Board meetings are, but are instead non-public forums subject to lower scrutiny. Accordingly, the county argues, the committee could restrict Castronovo from speaking because he was not invited to speak at those committee meetings. In reply, Castronovo contends that the public works committee regularly permits public participation, and therefore, it is the same kind of designated public forum as the Board meetings.

"Public property not open for public communication by tradition or designation is deemed a nonpublic forum." Surita, 665 F.3d at 869. "The government can restrict access to a nonpublic forum as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speakers view." Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677-78 (1998) (alterations and quotation marks omitted). However, if the government makes "the property generally available to a class of speakers," then it becomes a designated public forum. Id. at 678. "A designated public forum is not created when the government allows selective access for individual speakers rather than general access for a class of speakers." Id.

Here, both parties argue extensively concerning whether the public works committee meetings were designated public forums or nonpublic forums, however neither addresses the Illinois law that controls the issue. Under the Illinois Open Meetings Act, county committees qualify as "public bodies." See 5 ILCS 120/1.02 ("'Public body' includes all legislative, executive, administrative or advisory bodies of the States, counties,

townships, cities, villages . . . and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue . . . ."). According to 5 ILCS 120/2(a), "[a]ll meetings of public bodies shall be open to the public unless excepted in subsection (c)." None of the exceptions at subsection (c) apply to the public works committee of the Board. Under the Act, part of being an open meeting is the requirement that "[a]ny person shall be permitted an opportunity to address public officials under the rules established and recorded by the public body." 5 ILCS 120/2.06. Defendants have not directed this court to, nor has this court found on its own, any set of rules purporting to govern what class of speakers are restricted from speaking at committee meetings. Therefore, the law requires that the committee meeting is a designated public forum for any member of the public who wishes to address the public body. Winnebago County has not asserted that its flat refusal to permit Castronovo to speak at those meetings, the critical ones during which his resolution was considered, was anything other than a content based restriction. Accordingly, because the forum was a designated public forum, and the restriction appears to have been a content based restriction based on the record before the court at this time, Winnebago County's motion for summary judgment as to this allegation is denied.

### 4. Fiduccia's Threats

Winnebago County next moves for summary judgment on Castronovo's allegation that his freedom of speech was violated by defendant Fiduccia who allegedly asked Cherry Valley Police Officer Stacey Goble to threaten him.[2] Winnebago County specifically points to interrogatory evidence from Fiduccia wherein he asserts that he never told any police officer to threaten Castronovo. In reply, Castronovo relies on his own deposition testimony concerning the threat from the police officer to argue that there was a genuine issue of material fact.[3] Winnebago County, however, objects that Castronovo's testimony concerning the threat is hearsay and thus he has not provided any admissible evidence to rebut Fiduccia's answers to interrogatories. See Fed. R. Evid. 801 & 802 (stating that hearsay—an out of court statement offered for the truth of the matter—is typically inadmissible). The court agrees with Winnebago County.

Federal Rule of Civil Procedure 56(c)(2) provides that a party must present evidence in a form that could be admissible at trial to raise a genuine issue of material fact. See Cortezano v. Salin Bank & Trust Co, 680 F.3d 936, 942 (7th Cir. 2012) (citing Fed. R. Civ. P. 56(c)(2)). Here, Castronovo provides his own deposition testimony that an officer told him that Fiduccia instructed the officer to threaten Castronovo. This is classic hearsay within hearsay. See Fed R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Fiduccia's instruction to the officer, as reported to Castronovo by the officer, is the "inner layer" of hearsay while the officer's statements to Castronovo, as reported by Castronovo in his deposition, is the "outer layer" of hearsay. The "inner layer" qualifies for an exception to Rule 802's general prohibition on hearsay, specifically the party opponent exception set out at Rule 801(d)(2). However, the "outer layer," Castronovo's testimony itself, does not qualify for an exception. See Fed. R. Evid. 801, 803, 804, 807. Castronovo is clearly offering the officer's statement for the truth of the matter—that Fiduccia told the officer to threaten Castronovo—and therefore the statement falls within Rule 802's prohibition. See Cortezano, 680 F.3d at 942 ("The email states that 'Salin warned ... [that] she had been opening up fraudulent accounts....' Thus, the email indicates that Salin Bank made certain statements, and its only possible use is to show that the Bank did in fact make those statements. The email is inadmissible hearsay, and the district court properly disregarded it on summary judgment." (citing Fed. R. Civ. P. 56(c)(2)). Although Castronovo now argues that he could call Officer Goble to testify to the matter at trial, he attaches no affidavit or deposition testimony from the officer to show what Goble's testimony would be at trial. Because this court is required to reject Castronovo's testimony that Fiduccia ordered Goble to threaten him, there is no evidence on the record to rebut Winnebago County's evidence that Fiduccia never requested that Goble threaten Castronovo. Accordingly, there is no genuine issue of material fact as to this allegation and Winnebago County's motion for summary judgment is granted.

## III. CONCLUSION

Winnebago County's motion for summary judgment is granted in part and denied in part. Specifically, Count II remains as to the allegations that defendants violated Castronovo's free speech rights by refusing to permit him to speak at the public works committee meetings and to the allegations that the Board Chairman instructed Castronovo that he could not speak before the Board as a whole if he were to name names in his speech. As to the remaining allegations of Count II, Winnebago County is granted summary judgment.

---

1. The other two speeches involved a request from Castronovo for an ordinance to allow home occupied businesses to apply for permits to hire employees and another speech concerning the rules of proper procedure for public participation at the Board's meetings. Neither of those speeches are relevant to the issues remaining before this court.

2. In his response to the motion for summary judgment, Castronovo belatedly identifies other purported threats made by assorted defendants which he claims were designed to stifle his speech. None of these threats, however, were included in the allegations of the complaint. A response to summary judgment is an inappropriate place to raise new allegations not raised in the complaint. Andree v. Ashland Cnty., 818 F.2d 1306, 1314 n.11 (7th Cir. 1987) ("However, the complaint did not set forth any claim of selective prosecution. The district court properly excluded such a claim, made for the first time in plaintiffs' showing in opposition to summary judgment. Plaintiffs' complaint did not give fair warning of the theory."). Accordingly, this court will not consider those allegations. Should Castronovo wish to move to amend his complaint, the court reminds him that Federal Rule of Civil Procedure 15 provides the correct procedure.

3. Castronovo, in his brief, purports to rely on several other sources, including an affidavit from an individual who was there at the time of the threat and a newscast. The affidavit, however, was not attached to the summary judgment motion or any response to it. Furthermore, to the extent it states the same thing as Castronovo's deposition testimony, it suffers from the same flaw. The newscast does not mention any police officer or any threat and, instead, concerns only the fact that Castronovo met with several of the defendants to discuss his concerns about the median.